UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | * | CASE NO. 22-58271-JRS |
| | * | |
| WAYNE D. REID, II, | * | Chapter 13 |
| | * | |
| Debtor. | * | |
| _____ | * | |

**REPLY TO RESPONSE TO MOTION OF ELIZABETH R. BRUCK FOR PROTECTIVE ORDER OR, IN THE ALTERNATIVE, TO QUASH**

Elizabeth R. Bruck hereby files this Reply to the Response to Motion for Protective Order or, in the Alternative, to Quash [Doc. 51] filed by Ginger Judge f/k/a Ginger Reid ("Movant") and respectfully shows:

Elizabeth Bruck, in her capacity as trustee for her parents' trusts (the "Trusts"), has collected approximately 1,200 pages of the trusts' bank and investment account records responsive to the Court's order that the trusts produce account records on any accounts on which the Debtor held signature authority. These are complete bank and investment account statements, with account numbers, balances, investments, values and purchases and sales of securities within the accounts. These pages do not conveniently disclose distributions to Debtor, of which there are none in any event. Rather, the pages showing starting balance, ending balance and any security purchases or sales are the manner in which the statements show that monies did not leave the accounts. It is not possible to redact the financially confidential information without sacrificing the ability to show that there were no withdrawals for the Debtor.

Therefore, Mrs. Bruck is stuck in a catch-22. Showing her parents' Trusts' financial account records would demonstrate that the Debtor took no monies, and therefore they do not contain any pertinent information concerning the Debtor's bankruptcy estate. *See* Fed. R. Bankr.

1

P. 2004(b). Unfortunately, this revelation would in turn open every intimate financial detail of the Trusts keeping her parents alive. This includes the parents' assets, account numbers, transaction history, investments and other information contained in bank and investment account statements. There is a simple solution to both prove that these records show no transactions relevant to the Debtor's bankruptcy case and simultaneously prevent disclosure of non-Debtor information: Ms. Bruck's proposed protective order. This would allow Movant to review the records for any purposes relevant to the Debtor's bankruptcy case and proper under Rule 2004(b), but also prevent the trust records from becoming fodder for Movant's ongoing and interminable divorce proceedings with the Debtor or any other proceedings in any other forum. Movant has flatly refused to accede to any terms of a protective order that would limit the use of these records to the purpose for which they were produced.

Beyond a series of legal arguments and good faith disagreements of perspective Movant mischaracterizes as "mischaracterizations"[1] of fact, Movant ignores or waives away Ms. Bruck's

---

[1] [*See* Doc. 51 at 5-7]. As nearly all of these alleged mischaracterizations are merely disagreements between the Parties, Ms. Bruck declines to quibble with each of Movant's interpretations of the facts. However, Movant also appears to threaten some kind of sanctions of counsel in a footnote, which does require a brief address.

On February 9, 2023, an email was sent to Movant's counsel, Ms. Bruck's counsel, the Debtor's counsel, and counsel for the Chapter 13 Trustee from Mr. Ron Balser, Movant's father (who had not been included on prior correspondence). Upon information and belief, Mr. Balser is not a party in any way to this case and is not represented by Movant's counsel, or any counsel, in this case. This email was not covered by any form of privilege. Moreover, the email describes what appear to be instructions to Movant's counsel, by Movant's father, to seek to compel the debtor to "gift" himself monies that the Debtor holds in trust for the benefit of his parents. Both Debtor and Mrs. Bruck have submitted sworn testimony that this is not the first time Movant has sought to pressure the Debtor into breaching his duty as trustee to compel Debtor to pay trust monies to Movant. There is no legally cognizable basis to compel the Debtor to do so, and Movant's efforts to drag the Trusts into an ongoing divorce proceeding and to seek discovery from the Trusts to pursue claims related to their divorce is for an improper purpose unrelated to the Debtor's bankruptcy case. As such, Movant's counsel has breached Rule 4.4(a) of the Georgia Bar Rules as well as Fed. R. Bankr. P. 9011(a).

The communication from Mr. Balser is evidence that Movant pursues the Trust records for an improper purpose and damages the Trusts. The responsibility of counsel to expose this improper purpose far outweighs any interest or "right" Mr. Balser has in keeping that purpose hidden. *See* Ga. Bar Rule 4.4, Comment [1]. It is also worthy of note that no other recipient of the email at issue notified Movant's counsel of the email, which is the extent of the Rule. Counsel's use of this as evidence is not prohibited by any rule as the communication is not privileged in any way. Movant's Counsel's attempt to construe Movant's father as a "consultant" is specious. The Trusts will be pursuing all available remedies against Movant and Counsel based upon the costs and expenses incurred in pursuing discovery for an improper purpose and based upon no legally cognizable claims for relief.

myriad privacy concerns in favor of Movant's own vague, potential ability to use the requested documents in objecting to confirmation. This argument entirely misses the point of the protective order. Under the proposed protective order, Movant may use the records for any proper purpose in this bankruptcy case, subject to whatever evidentiary issues may otherwise apply. Mrs. Bruck objects to the unfettered use of the trusts' bank account records and investment account records for any other purpose in any other forum, or dissemination of the records to parties not involved in pursuing applicable relief in this bankruptcy case. Movant's position is essentially that she want the records for the bankruptcy case, despite affidavits on record disavowing any payments to Debtor, but once they obtain the records they could publish these records anywhere they wish without restriction. The only thing a protective order would hinder is Movant's ability to use these documents for an improper purpose, which purpose is universally recognized as grounds for denial of a Rule 2004 exam or entry of a protective order.

    A. *The Protective Order*

The proposed protective order allows Mrs. Bruck to designate records as confidential as part of the production. Such records can only be used for purposes of this bankruptcy case and access to the records is restricted. Counsel of record for each party in this bankruptcy case are allowed to receive and review the records, as are the Court and the Office of the United States Trustee. Movant's counsel will have access to the records so that she can evaluate whether the records support her objection to confirmation of the Debtor's plan. This is appropriate, as there are already two affidavits of record addressing the issue and the production was in order to allow Movant's counsel to see the records for herself. Otherwise, the persons receiving and reviewing the records are not to copy, share or use the records in any other forum for any other purpose.

A party may challenge the confidential designation under the terms of the protective order, so the Court retains ultimate authority to determine what records are confidential. If the records are to be used, they need to be filed under seal. The records may be used in Court, but require that the Court determine if the confidential records should continue to be deemed confidential. Once the purpose of the production is no longer served, if Movant's objections are resolved by Court order, dismissal of the case or conversion to Chapter 7, parties receiving copies of the confidential information are required to destroy or return the records and certify that they have not been given to any other party. Finally, pursuant to Rule 45(d), the party seeking records shall reimburse the producing party for all costs and expenses, not including attorney fees. These terms allow for the use of the records for the purpose for which they were produced, prevent dissemination of the records to any other parties and prevent use of the records in any other forum and for any other purpose. These terms are reasonable in light of the fact that the records belong to third parties and the monies in question are not property of the bankruptcy estate. 11 U.S.C. § 541.

Movant's blanket rejection of any form of protective order either entirely misses the point of such an order or suggests Movant intends to make use of the documents for improper purposes. Ms. Bruck has prepared nearly 1,200 pages of records which describe every financial transaction and detail of the two Trusts that provide for the care of her parents, who can no longer care for themselves. These records demonstrate, once and for all, what the sworn testimony of both her and the Debtor has already stated: the Trusts never paid, nor hid, financial assets of the Debtor. Rather, the Trusts were solely used to care for the parents.

B. *Restrictions on Use of the Records*

The records being produced were only ordered to be produced for the ostensible purpose of objecting to confirmation of the Debtor's plan. The protective order allows for that use. It also prevents the use of the records for purposes that are universally deemed to be "improper" by Courts, including use of records in other actions and for other purposes in other forums. "An examination about matters unrelated to the debtor's affairs or having effect on the administration of his estate is improper." In re Kearney, 590 B.R. 913, 921 (Bankr. D.N.M. 2018) ("'It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.'"); In re Sanomedics, Inc., 583 B.R. 796 (Bankr. S.D. Fla. 2018) (efforts to obtain records for use for another purpose in another forum is improper); In re Bibhu, LLC, 2019 Bankr. LEXIS 94, (Bankr. S.D.N.Y. 2019); In re Cambridge Analytica, LLC, 600 B.R. 750 (Bankr. S.D.N.Y. 2019) (seeking Rule 2004 discovery for the purpose of obtaining discovery in a Delaware derivative action is an improper purpose); In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y 2002); Snyder v. Soc'y Bank, 181 B.R. 40, 42 (S.D. Tex. 1994), aff'd sub nom In re Snyder, 52 F.3d 1067 (5th Cir. 1995) (use of Rule 2004 exam to further litigation of a case in state court is an "abuse" of the rule). Production of records in an action in any other forum is subject to the applicable Rules of Procedure of that forum, and Rule 2004 production should not serve as a way around other applicable rules. In re Bennett Funding Grp., Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y 1996). Therefore, the protective order only prohibits use of the records for purposes that would otherwise be deemed improper as a matter of fact and law. Access to the records is similarly restricted to persons involved in pursuing the relief Movant claimed was the purpose of the records production. Indeed, the very act of seeking records for a purpose outside of the auspices of the bankruptcy case is a violation of Rule 9011 and is

5

sanctionable. Martin v. Schaap Moving Sys., 1998 U.S. App. LEXIS 15255 (2nd Cir. 1998). Movant's refusal to agree to a protective order that merely prohibits conduct that would be sanctionable speaks volumes about the intended purpose of this exercise.

Although Movant cites the Eleventh Circuit's standards for finding good cause to grant a protective order, Movant fails to adequately analyze those factors according to the facts of this case. The Eleventh Circuit Court of Appeals has directed courts look to factors such as "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order," Carrizosa v. Chiquita Brands Int'l, Inc. (In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig), 965 F.3d. 1238, 1251 (11th Cir. 2020) (citing In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987)), as well as a "balancing of interests" under Rule 26(c). Id. (citing Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). Essentially, good cause exists where "[a] party's privacy or proprietary interest in information . . . overcomes the interest of the public in accessing the information." Romero, 480 F.3d at 1246. Wainberg v. Piedmont Coll., 2019 U.S. Dist. LEXIS 238634, at *3 (N.D. Ga. Dec. 4, 2019) (citing Romero v. Drummond Co., 480 F.3d 1234, 1246 (11th Cir. 2007)).

Each of these factors, as well as the balance of interests, weighs in favor of entry of a protective order in this case.

   i.  Severity of Potential Harm

While Ms. Bruck is ready and able to provide these documents to Movant, the sheer financial intimacy of these third-party records demands that the records be protected. Again, these documents show every account number, every financial transaction, every balance and location of assets within the parents' Trusts. This breadth of production is necessary to answer

6

Movant's requests, because although the Debtor took no functional actions as a trustee, he was nominally co-Trustee of the Trusts until recently and had signature authority on several bank and investment accounts. Thus, account statements and transactional records during the requested time period must be provided to prove the negative Movant is demanding—that no disbursements were made to the Debtor.

These documents are inherently confidential and are not documents in which there is any public interests of disclosure. The inherently confidential nature of information such as this has led to District Courts in this District to consistently find these sorts of documents merit protection. See, e.g., Ponder v. Experian Info. Sols., Inc., 2021 U.S. Dist. LEXIS 126850, at *18 (N.D. Ga. May 18, 2021) (finding personal and financial information of plaintiff should be sealed because "there is generally no public right of access" to information including personal identifiers and account numbers, as well as a necessity in evaluating the documents in unredacted form); Defendorf v. Rail, 2021 U.S. Dist. LEXIS 263097, at *20 (N.D. Ga. Mar. 30, 2021) (finding good cause to protect financial records of non-parties). The Trusts are not bankruptcy debtors. Neither the Debtor nor Movant have any property interest in the records or the monies. The Trusts contain spendthrift provisions, the monies are not property of the estate, and Debtor cannot raid the trusts for Movant's benefit. Driscoll v. Ultimate Reserve Trust (In re Tait), 2008 Bankr. Lexis 2489 (Bankr. S.D. Ala. 2008); Swartz v. Fetter (In re Fetter), 354 B.R. 242 (Bankr. C.D. Ill. 2006) (spendthrift provisions in a trust prevent trust res from being property of the estate pursuant to 11 U.S.C. § 541(c)(2) regardless as to whether the Debtor holds a residual interest); Tort Claimants Comm. V. Roman Catholic Archbishop (In re Roman Catholic Archbishop), 345 B.R. 686 (Bankr. D. Or. 2006) (trust res is not property of the bankruptcy estate pursuant to 11 U.S.C. § 541(d)).

As the Eleventh Circuit recently noted, "[t]he tools of the information age have only made more apparent what has always been true—once information is revealed, it cannot be made secret again." Callahan v. United Network for Organ Sharing, 17 F.4th 1356, 1361 (11th Cir. 2021) (citing In re Chiquita Brands Int'l, Inc., 965 F.3d 1238, 1246 (11th Cir. 2020)). Without a protective order, all of the Trust documents would be ripe for exposure and use contrary to the purpose for which the records were produced, by persons who were never authorized to receive the documents and in forums beyond this Court. Releasing control over the records to Movant, a hostile litigant, compounds the risks that the records may be released simply as a matter of spite, or because there is nothing preventing her from doing so. Movant has already attempted to leverage Debtor's status as a fiduciary to compel the Debtor to invade the trusts, mortgage the trust assets and pay Movant the proceeds. Such and act is unquestionably a breach of fiduciary duty. Driscoll v. Ultimate Reserve Trust (In re Tait), 2008 Bankr. Lexis 2489 (Bankr. S.D. Ala. 2008) (use of trust assets to pay personal obligations or obtain property in the trustee's name is a breach of fiduciary duty justifying imposition of a constructive trust on any assets so obtained). Movant has already demonstrated[2] her intent to invade the trust res and continues to do so under the pretense of an objection to confirmation. The protective order is merely to ensure that the records are used for the purpose for which Movant avowed when seeking the production.

Now that the Debtor is no longer a trustee, Movant may attempt to use public exposure of the non-debtor parents' records as a tool of harassment or attempt to further "leverage" Mrs. Bruck with threats of disclosure. Mrs. Bruck would be forced to close all the accounts, move monies, sell assets and change relationships with bankers/investment brokers just to maintain the confidential nature of the trust assets and her care for her parents. This drastically increases the

---

[2] Although Movant denies such actions in her Response, without support of any kind beyond mere argument, both Ms. Bruck and the Debtor have submitted affidavits testifying to these actions. [Doc. 43 at 55, 59].

8

risk of potential identity or other theft, the time and expenses associated with this exercise ,to say nothing of the continued efforts to by Movant to compel the Debtor to breach his duty to the trusts. Movant's protestations that she would not do so ring hollow in the face of her refusal to the terms of an order designed to prevent that eventuality. If there is no intention to use the records in such a way, an agreement not to do so should not be met with a complete refusal to even consider any restrictions on use of the records.

Given the inherent risk to the corpus of the Trusts that would come from near-complete exposure of all financial information, which is inherently private in this District, this factor weighs in favor of a protective order.

    ii.    Precision of the Order

Movant appears to engage with the substance of the proposed protective order for the first time in arguing that the documents Movant requested "will require review by financial professionals and by professionals who have significantly more history with Debtor than Ms. Judge's undersigned bankruptcy counsel to understand the information being provided in order to determine if they show an asset or income for the estate" and that in turn "[t]estimony may be appropriate based on this review at the time of confirmation." [Doc. 51 at 9]. This is nonsense. Movant's purpose in seeking the records was ostensibly to see if the Debtor took money or property from the Trusts. The vast majority of the records show a beginning balance, an ending balance and only adjustments for payment of interest and dividends into the account, or assessment of any fees by the bank and/or investment account holder. The trust records confirm the affidavits on record and show that no such disbursements took place. Movant is not conducting an audit of the Trusts, their assets or valuing them. This is simply a question of disbursements to the Debtor, which do not require professionals other than Movant's counsel to

9

see whether there was a transfer of monies to the Debtor. If Movant wishes to depose Mrs. Bruck about any transaction, she may.

Paragraph 6 of the proposed protective order clearly states Ms. Bruck's goals and the reason for the protective order: "Information designated as CONFIDENTIAL shall not be used or disclosed by an Examinee for any purpose other than in connection with the pending bankruptcy case of Wayne Reid, II. Given the risk that the Confidential Information may be used in non-bankruptcy litigation, the only persons who shall have access to Confidential Information produced hereunder, or to the substance thereof, shall be Qualified Persons as are defined below." [Doc. 50-1 at 3]. In her reply, Movant as much as admits that it is her intention to give the trust financial records to counsel and parties engaged in her divorce action and ongoing contempt efforts concerning the Debtor. Both of which are improper purposes and contradict the purpose for which the records were to be produced.

Furthermore, Paragraph 8 includes as "Qualified Persons" attorneys (and their employees) for the Debtor, the Trustee, and Movant, as well as all Court employees. In short, everyone who would be necessary to conclude that there were no disbursements to the Debtor and litigate any issues with confirmation of the Debtor's plan of reorganization. Paragraphs 10 and 13, meanwhile, contemplate the use of produced documents in the examination of witnesses. [Doc. 50-1 at 3-6].

Movant's objections thus essentially boil down to a question of whether or not she may share the trust records with Movant's counsel in her divorce action or other "professionals" engaged in that action. One need not be a forensic accountant to see a disbursement on a bank statement, or lack thereof. The only "professionals" engaged are those who are pursuing the Debtor in his divorce. An effort to utilize records for the purpose of litigation in another forum

10

is sanctionable. The protective order allows for use of the records in this forum, for the reasons recited by Movant's counsel in seeking the records and otherwise curtails the use or retention of the records.

    iii.    Least Onerous Option

These are not the kinds of documents that can merely be redacted. Essentially every page has either an account number, balance figure, or some other identifying and/or sensitive piece of information on it. Redaction would render these documents barely, if at all, functional for the purpose Movant seeks them. Moreover, to redact in such detail 1,200 pages, when a simple protective order would provide more protection and functionality, would be an immense burden in time and money on third-party Ms. Bruck. Mrs. Bruck also requests that the Court take note of the fact that Movant has refused to reimburse Mrs. Bruck for costs of the production, which is mandated by Rule 45(d). Such reimbursement terms were also in the protective order. Insisting that Mrs. Bruck bear the costs of such redaction where Movant is already refusing to reimburse her costs is legally unsound and highly inequitable.

Ms. Bruck has prepared all documents ordered by the Court. They are bates stamped and ready to be produced. If a protective order were to be entered, Ms. Bruck would produce the documents immediately without fear of improper disclosure, and Movant would be able to review them in their entirety. Forcing Ms. Bruck to redact, as Movant appears to request [Doc. 51 at 9-10], would cost many hours in attorney time and expenses for which Movant has already refused to pay and would likely only lead to further litigation should Movant decide (once the documents demonstrate no transfers to the Debtor) that the documents must have been overly redacted. This would only waste the time of Ms. Bruck, Movant, and the Court.

      iv.      Duration

Paragraph 15 of the proposed protective order limits the use of the documents to the earlier of the Debtor's plan confirmation, conversion of the case to Chapter 7, or dismissal. [Doc. 50-1 at 6]. Taken the other way, Movant will be able to use all requested documents in order to do each of the action for which she specifically states she needs them: "to prosecute her objection to confirmation." [Doc. 51 at 10]. So long as Movant is truthful in her insistence these documents are only intended to be used in this Bankruptcy Case, this factor does not harm Movant. The protective order requires the destruction or return of the records after they have served their purpose in this bankruptcy case, and prevents the dissemination of the records for purposes other than the bankruptcy case.

      v.      Balance

Movant demands the Trusts expose all financial documentation for the world, with no protection and no recourse for improper use after exposure. To justify an interest in these documents being available without any protection at all, Movant makes a series of arguments about the Debtor's plan and Movant's potential objections to confirmation. This is question begging. Movant assumes, despite affidavits and other sworn testimony to the contrary, that there *must* be a link between these documents and the Debtor's Estate, and therefore disclosure of these documents is in the public interest. These are not Estate records, the monies are not Estate property, there is no basis in fact or law to compel the Debtor to "gift" himself monies out of the trusts, and Debtor lacks the ability to do so since he has resigned as a trustee. In short, Movant has not articulated for the Court any reason why the Trust monies should be considered to be assets of the Estate. In fact, at the hearing on her 2004 Motion, Movant admitted that property of the Debtor's parents was not Estate property. Absent any articulable basis for further involving

12

the Trusts in this ongoing divorce action, there is no public interest in the trust records belonging to the Debtor's parents and these records are not related to the Debtor's bankruptcy case.

Movant's remedy is no remedy at all, but merely further demonstrates her determination to use the records for something other than the bankruptcy case. These documents do not show a single transfer to the Debtor. The protective order allows Movant to challenge the confidential designation of a record, but until then the records are protected. Movant's solution is "[i]f a filing is made and is inappropriate, an objection can be made to it. If the Court agrees, it can be sealed." [Doc. 51 at 9]. In other words, if Movant lets the horse out of the barn, then the Court can simply close the barn door. This ignores the use of the records by persons not engaged in the bankruptcy case for unrelated purposes from which the records were produced. The Trusts are not parties to this action and do not want to be involved in this bankruptcy case or have to continuously monitor the litigation for use of the Trusts' confidential records. Forcing the Trusts to maintain a continuing involvement and attorney fees in this action just to protect its records is highly prejudicial. Movant's solution, furthermore, does not even address the Trusts concerns about use of the records for an improper purpose. So long as the records don't show any transactions with the Debtor, and are not used for the stated purpose of the production, Movant would have free reign to use the records in any other forum, for any other purpose, and the Trusts would need to be forevermore on the lookout for any filings by Movant in any forum for any purpose. If the records are not being used to object to confirmation of the Debtor's plan, Movant has no basis to retain or use the records at all.

With this in mind, the balancing of risks in question features, on the one hand, the potential permanent publication of every financial detail of the parents' Trusts, the need to change accounts, change relationships, hope that no identity theft takes place, the need to assume

13

the time and expense for redacting 1,200 pages of records without reimbursement, the fees associated with continuously monitoring the pleadings in this case and any future case in effect taking on the costs of a litigant in this and any other forum, the continuing prospect of the records being used for an improper purpose in some other forum, or simply just the threat of publication of records for the purpose of harassment. On the other, Movant would have to contest the confidentiality designation of a document or file a motion to unseal any document she deems relevant to her confirmation objection. These are not comparable risks or burdens.

Ms. Bruck acknowledges the profound public interest in the finances of a debtor in bankruptcy. However, neither Ms. Bruck nor her parents nor the Trusts are in bankruptcy. Furthermore, the documents in question demonstrate no financial nexus between the Trusts and the Debtor. In short, these are not the Debtor's financial information and giving Movant free reign to possess and use these records other than for the purpose delineated by Rule 2004 is an abuse of the bankruptcy process, contrary to existing case law, highly inequitable and harmful to the Trusts and their beneficiaries.

Given the immense potential harm to the third-party Trusts Ms. Bruck serves, the inherent right to privacy entailed by these kind of documents, and the relative lack of burden imposed on Movant (beyond a duty to ensure the documents are not exposed or misused), the balance overwhelmingly favors imposition of a protective order.

C. *Movant Misses the Entire Point of a Protective Order*

Ms. Bruck is not contesting the Court's previous Order on the question of the 2004 Motion. In that context, Mrs. Bruck contested the breadth of the records requested and expressed her fear that they were being sought for an improper purpose. The Court denied the majority of Movant's requests but allowed production of certain bank account and investment account

records. The production of the records is not at issue. The use of the records, the persons having access to them, the costs of the production and Mrs. Bruck's insistence that the records be returned or destroyed without retaining copies is the issue.

Movant will have access to the records identified by the Court for the purposes Movant alleged when making the request. However, Movant has plainly stated that she intends to give these records to other attorneys and unidentified "professionals," her client, and anybody else she pleases without regard to the reason for which the records were produced. Per Movant, the records could be used in any purpose, in any forum at any point in the future—even published in a newspaper if the mood takes her. Movant's use of the records for any reason not related to this bankruptcy case is not only contrary to representations made to this Court, but is also a sanctionable act. The protective order is a reasonable request that does not prevent Movant from using the records for the stated purpose and only denies use of the records to the extent that they would be used for any sanctionable purpose. The fact that Movant refuses to concede to any restrictions on use is without justification legally or practically and only serves to justify the Trusts' request that such restrictions be in place before any production.

 Respectfully submitted,

              MACEY, WILENSKY & HENNINGS, LLP

              /s/_____
              Todd E. Hennings, Bar No. 347302
              Clayton A. Smith, Bar No. 196303

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234
(404) 681-4355- Facsimile
clayton@maceywilensky.com

15

**Certificate of Service**

I hereby certify that, on April 27, 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF system which should serve the foregoing on all parties and counsel of record with the Court.

/s/_____
Todd E. Hennings, Bar No. 347302
Clayton A. Smith, Bar No. 196303

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234
(404) 681-4355- Facsimile
clayton@maceywilensky.com